### 69326. SHEPHERD v. THE STATE.
(326 SE2d 596)

BENHAM, Judge.

Appellant was convicted of two counts of rape; three counts of aggravated sodomy; two counts of burglary; two counts of aggravated assault; one count of robbery; and two counts of making terroristic threats. In his first enumeration of error, he questions the sufficiency of the evidence.

1. One of the victims testified that she awoke at 3:30 a.m. on April 10, 1982, to find a man standing beside her bed. He ordered her to roll over and cover her head with a pillow, and he stuck something sharp, which he said was a knife, in her back and threatened her with physical harm if she screamed or struggled. He questioned her about occupants of the house, her work, and her relationship with her boyfriend, and turned on a light. He placed his mouth on her sex organs and then had sexual intercourse with her against her will. Afterward,

he took $40 from her purse and threatened harm to her and her children if she called the police before morning.

A second victim testified that a man entered her bedroom in the early morning hours of July 6, 1981. He turned on a light, made the victim lie face down on her bed, and placed a knife at the back of her neck. He put a terrycloth wrap on her head and placed his mouth on her genitalia. He than had sexual intercourse with her against her will, and forced her to place her mouth on his sex organ. He inquired about her work and her relationship with her boyfriend. When she said she felt dirty, he stayed and continued conversing with her while she bathed. The victim told the court that the man had a distinct voice and enunciated well. As he left, he threatened to kill her if she called the police.

This victim told the court that she received a telephone call on May 23, 1982, at 1:30 a.m. and recognized the voice as that of her attacker. The caller admitted having raped her and complained that someone else was being credited with doing what he had done. She asked specifically about the other victim, and the caller admitted having raped her as well. The witness stated that the phone call ended after 20 to 25 minutes of conversation, at which time she called the police detective investigating her case. The detective came to her house immediately and, when the rapist called again, listened on an extension line to the conversation. After hearing the sound of automobiles in the background, the detective went to his police car and radioed to patrolling cars to be on the lookout for a white male in a telephone booth. He told the officer responding to the radio call to make a loud noise if he should spot such a subject. The detective then returned to his task of listening on the extension. Two to five minutes later, he heard over the telephone a car engine and a certain police officer radioing in his location. At that point, the detective heard the rapist/caller say he had to go.

The officer at the scene struck up a conversation with the man he had found using a phone booth, and continued conversing with him until the investigating detective arrived. The officer who detained the caller identified appellant as the man he saw talking on a certain pay telephone early on the morning of May 23, 1982. He also testified that he heard the man say as he hung up, "I've got to go, I've got to go."

Appellant maintains that the evidence against him is based upon the victim's vocal identification of him and that that evidence was improperly admitted inasmuch as the proper foundation had not been laid.

"[A]lthough voice identification testimony is generally considered to be direct evidence [cits.], Georgia courts have construed such testimony to be opinion evidence, which, of course, is inadmissible unless the witness discloses the basis for his opinion. [Cits.] We also note

that a witness may identify a defendant by voice recognition even though his knowledge of the accused's voice was acquired after the event to which the witness testified. [Cits.] And the probative value to be accorded such evidence is a matter for the jury's determination. [Cit.]" *Willingham v. State*, 134 Ga. App. 603, 604 (215 SE2d 521) (1975).

Here, the victim testified that she immediately recognized the phone caller's voice as that of her assailant. She stated that he spoke distinctly, that he enunciated well and pronounced words clearly, that he did not slur his speech, and that he used correct grammar. She also recounted a number of conversations she had had with her assailant during her ordeal. We conclude that a sufficient foundation for the admission of the opinion testimony was laid. That being so, the evidence authorized a rational trier of fact to find appellant guilty of the charges for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA §§ 16-5-21 (a); 16-6-1 (a); 16-6-2 (a); 16-7-1 (a); 16-8-40 (a); 16-11-37 (a).

2. Appellant also takes issue with the admission of several items of evidence. Two items were admitted in connection with the crimes of which appellant was acquitted. Therefore, the correctness of their admission is moot. The objections with regard to the remaining evidence were not voiced until the close of the state's case, sometime after the admission of the items into evidence. At the time the exhibits were tendered by the state, counsel for appellant announced a desire to reserve his objections. The trial court admitted the exhibits, noting that no objections had been voiced. "It is well settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection. [Cits.]" *Miller v. State*, 158 Ga. App. 21 (279 SE2d 289) (1981). "[I]t is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which might have been raised. [Cit.]" *Glisson v. State*, 165 Ga. App. 342 (5) (301 SE2d 62) (1983).

3. In his last two enumerated errors, appellant takes issue with portions of the trial court's instructions to the jury. Appellant asserts that the charge on circumstantial evidence was "completely confusing." The charge, as transcribed, read as follows: "Circumstantial evidence alone will not justify a finding of guilty unless the circumstances are entirely consistent with the defendant's guilt, wholly *and* consistent with any reasonable theory of the defendant's innocence, and are so convincing as to exclude a reasonable doubt of the defendant's guilt." (Emphasis supplied.) With one exception, this charge was approved by this court in *Carpenter v. State*, 167 Ga. App. 634 (8) (307 SE2d 19) (1983). The one exception concerns the word emphasized above: the paradigmatic charge reads "wholly inconsistent" rather than "wholly and consistent." It is apparent that the obvious

mistake is a scrivener's error. Reading the charge as a whole, we find no reversible error.

4. Finally, appellant contends that the trial court's charge on intent impermissibly shifted the burden of proof to appellant, contrary to the rule enunciated by the United States Supreme Court in *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). The court instructed the jury that: "[E]very person is presumed to be of sound mind and discretion but this presumption may be rebutted. I charge you that you may infer the acts of a person of sound mind and discretion are the product of his will and you may infer that a person of sound mind and discretion intends the natural and probable consequences of his act. Whether or not you make any such inference is a matter solely within the discretion of the jury." Appellant claims that the trial court's failure to tell the jury that the "presumptions" were rebuttable is harmful error. We would agree, if indeed that were the case. See *Sandstrom*, supra. However, in the case at bar, the trial court followed a practice approved by the Supreme Court in *Hosch v. State*, 246 Ga. 417, 420 (fn. 2) (271 SE2d 817) (1980): the substitution of "you may infer" for language stating a presumption. See *Godfrey v. Francis*, 251 Ga. 652 (3) (308 SE2d 806) (1983). In light of the fact that the offending charge was couched in terms of inferences and the jury informed that it alone could determine whether it would make such inferences, we find that the jury could not have interpreted the charge as shifting the burden of persuasion to appellant. Compare *Johnson v. State*, 249 Ga. 621 (1) (292 SE2d 696) (1982).

*Judgment affirmed. Banke, C. J., and Pope, J., concur.*

DECIDED FEBRUARY 20, 1985.

*Ralph C. Smith, Jr.*, for appellant.
*J. Brown Moseley, District Attorney, Nica J. Hersch, Assistant District Attorney*, for appellee.